The next case this morning is 521-0510 N. Ray Marriage of Davis. Arguing for the appellant William Davis is Jonathan Kibler. Arguing for the appellate Carol Davis is Jay Schaefer. Each side will have 15 minutes for their argument. The appellant will also have five minutes for a rebuttal. Please note only the clerk has been permitted to record these proceedings. Good morning, gentlemen.  You ready to proceed in this manner? Yes, your honor. Okay, Mr. Kibler, you want to begin? Yes, your honor. Justices Welch, Cates, and Moore, may it please the court, I'm going to provide a brief background to set the stage. This appeal arises from the involuntary dismissal of Respondent's Petition to Modify or Terminate Maintenance. Respondent's June 18, 2019, petition alleged as its basis that Respondent had reached retirement age, that he had retired, that he had continued to pay maintenance, that he had health problems affecting his ability to work, and that the non-marital family business he had owned and worked for was not profitable enough to continue to pay him as a co-owner and to also hire an employee to replace him. An involuntary dismissal operates as an adjudication on the merits under Rule 273. So I'm left with the question in that context then, whether that means that Respondent cannot ever modify his maintenance obligation in the future, despite the ongoing fact of his being past retirement age, having health problems, and having retired. And this is, I believe, a whole life or a 25-year maintenance obligation. And in that context, an involuntary dismissal is both extreme and drastic as a consequence for this litigation and also with respect to the outcome for Petitioner and his life. So I'm going to turn to the case law, and I'd like to start by addressing cases that were used by Petitioner in this case. Mr. Kibler, let me interrupt you because I want to make sure I understand. This dismissal was a sanction, wasn't it? It was a discovery sanction, that's correct. And was it brought under Rule 219? I believe that's the case, Your Honor. One of the things that we have contended in our argument was that there was a lack of specificity for the reasons and the basis for the sanction that was issued. So I'm not immediately recalling that the court's ruling referenced 219, but the court did specifically identify the substantial delay in discovery is how the court had termed it. So I believe that that is what the court was implying. But there's no indication in the court order that this was a 219 sanction? I don't believe it specifically references 219, Judge. Okay, thank you. Other than that, I will say that the judge was referencing Petitioner's counsel's motion of, I believe it was February of 2020, which did relate to 219. And so I would say in that sense that that was what was, I think, being thought of by the judge. Does that address the court's question? Yes. All right. So with regards to the case law, Smith v. City of Chicago stated that the articulated public policy of the state is that the underlying spirit of our system of civil justice is that controversy should be determined according to the substantive rights of the parties. And that the case explained that the application of the principle in the context of dismissal and vicarious punishment of a party for counsel's conduct, stating dismissal in action where the entry of an order of default may be an appropriate sanction for a party's refusal to obey a valid court order. However, such a drastic sanction being the antithesis of a determination of a cause on its merit should be employed only as a last resort after all other enforcement powers at the court's disposal fail. When, as in this case, sanctions are visited upon a party as vicarious punishment for the acts of his or her counsel, care must be taken in fashioning a sanction in which both adequately addresses the offending conduct and to the extent possible preserves the right of the party to be heard on the merits of her case. Petitioner also cited Gonzalez v. Nissan. Similarly, in Gonzalez v. Nissan, the court stated that the trial court is best with wide discretionary powers. Nonetheless, even if a court has determined the party is not reasonably complied with discovery and some sanctions are appropriate, the sanctions imposed must be just in proportionate to the offense. A just order imposing sanctions for failure to comply with discovery is one which, to a degree possible, ensures both discovery and trial on the merits. The purpose of providing sanctions for failure to comply with discovery rules is to promote the flow of discovery and not to punish a dilatory or non-complying party. The Illinois courts have determined that dismissal with prejudice is, one, a drastic punishment which the courts are reluctant to impose, two, to be employed only as a last resort in order to enforce the rule of discovery, and three, an inappropriate sanction where a trial can be had without hardship or prejudice. A dismissal with prejudice is so drastic a sanction that it should be employed only when a party has shown a deliberate and consummation disregard for the court's authority and all other enforcement measures have failed. The purpose of imposing sanctions under Supreme Court Rule 219C is to compel cooperation rather than to dispose of litigation as a means of punishing the non-complying party. The court may not invoke sanctions which are designed to impose punishment rather than to achieve or affect the objects of discovery. Mr. Kimbler, as I read the record, there was only one motion to compel ever filed um and that was on December 10th of 2019, is that correct? No, Your Honor, there were two motions to compel that were filed. There was one motion for sanctions. So the the first motion to compel was filed in December 19 of uh or December of 2019. Um and as I indicated in in um. So one motion, two motions to compel but only one motion for sanctions. That's correct. The first motion for sanctions was with respect to the first motion to compel. And okay so the only motion for sanctions was filed on what date? It was it was filed I believe in in on February 4th or about February 4th or January 28th. I think it may have been January 28th of 2020. Okay but um well on January 28th there was a status conference where um it indicated that Attorney Kibler had not complied with the order to compel. So that was January 28th. And that day the motion for sanctions was filed, I believe, Your Honor. Okay, the same day the motion for sanctions was filed. So January 28th. And then it seems to me that the record also shows that on February 4th you delivered, hand-delivered the discovery responses. Yes, Your Honor. I'm trying to figure out what the court granted relief on under the sanction order because it seems that you had complied with the discovery that was the subject of that particular motion for sanctions. Yes, Your Honor. There were no specific factual findings that were made. And that is, I think, an inescapable part of the problem with the sanction order in this case. The motion to compel that was filed in August of 2021 incorporated just merely, you know, on a, I think, a very simple and brief basis, incorporated the prior motion to compel and motion for sanctions. And I think the issue with that is with regards to due process, you know, there was no thought in my mind, certainly, at the time we went to hearing that sanctions could be issued related to discovery conduct occurring after the motion for sanctions had initially been filed and not related to that initial discovery, which had been completed. So at the point in time of the hearing, we were addressing discovery, follow-up discovery issues and objections, supplemental ones. In particular, that pertained to the third part, a third party respondent, the corporation that my client formerly owned half of, a family business. And the chief issue was, how are we going to get these documents? And so to try to address that, I actually also separately represented the corporation, which my client was not a part of, had been a part of since prior to the filing of the petition. And I approached the corporation about entering an appearance and offering to receive a subpoena from petitioner's counsel in order to try to get them the documents they wanted, all the while maintaining that my client, the respondent, didn't have them. So I really thought that's what we were addressing before the court in November, because we had also prior to that date produced every item that my client, the respondent, had in his possession. And I'd also produced documents and responded on behalf of the corporation as a third party respondent in discovery. So does that address the court's concerns? Mr. Kibler, you didn't see that as a conflict of interest? No, I didn't see it as a conflict of interest. On the one hand, you're trying to withhold documents that relate to the client. And on the other hand, you're trying to produce documents that relate to the client. Judge, I don't believe that there was a conflict of interest. I think the question was what was relevant for discovery purposes and what would be a newly birthed interest of discovery going on. And what I was asking the judge for was a ruling. We produced everything that we could that we thought was not objectionable. I did so on behalf of both parties, the third party and the original party of the action. And we were asking the court for a ruling on that issue so we could comply with it. I saw that you took credit for not responding to the January 28th motion for sanctions in a timely manner. The court didn't seem to buy into your request for that sanction. I'm not sure I follow the court, Your Honor. I think you said your office got too busy. Yeah, Your Honor, the problem, and I was very clear about it, that was the case. I was taking on too many cases. I'm 36. I'm the management partner in my law firm. We were dealing with the COVID-19 pandemic. I don't think I stated it on the record, but I think the court can infer that the general were encountering sickness and problems, which we were. And so, Your Honor, the thing is that there were no least restrictive measures attempted in this case. There were no prior orders. There were no attempts to provide guidance to the parties. There was no warning that the court was contemplating this sanction. There was no question that a trial could be had on the merits at this point. The petitioner had not been foreclosed or prejudiced in her ability to make her case. There was no factual finding that evidence was destroyed or hidden or that there was willfulness or intentionality in terms of consummation conduct towards the court. Well, it seems that there were efforts made to get financial records that Mr. Schaffer and his client couldn't get at that point. So, there couldn't be a trial on the merits until that happened, financial records. The financial records that were sought, that were additional and supplemental, were sought by Informal Discovery. And they related, if I recall correctly, primarily to updates and things of that nature. There was no trial setting scheduled. The issue was that Attorney Schaffer, the petitioner, thought that because my client was married to a longtime employee and an officer and shareholder of the corporation, that he should just get discovery from her as the respondent. He should be required to do that. And the business and he and his spouse are all separate legal entities with their own rights and responsibilities with respect to discovery. So, at that time, there was some question in the summer and some discussion about whether or not that discovery was going to be gotten by petitioner from Kemper CPA directly. And apparently, that didn't bear fruit. And as the petitioner's counsel noted, he kept having conversations with us. And then he finally decided to file a motion and to queue this up and move it before the court. And that's how things proceeded. So, there was no deliberate or contentious conduct. There was no order of the court prior to this to disclose certain items. You know, and ultimately, all of that bears out in the lack of specificity for the reasons and basis of the sanctions order. This is not a case where the case law indicates that the particular behavior of the offending party that gave rise to the sanction and the effects of that behavior on the adverse party, I think, are extremely important. Thank you. Mr. Kibler, you'll have a few minutes for rebuttal after Mr. Schaefer. Mr. Schaefer, you want to proceed? Thank you, Your Honor. If it pleases the court, Jay Schaefer, there's a reason that Kentucky Fried Chicken has been so successful for all these years. That reason is that they have a secret recipe that they won't let anybody else see. If everybody else had that recipe, they'd all make the same chicken. Mr. Kibler had a client who owned a hugely successful business and made piles of money and supported these people for all these years. He then gave that business after his divorce to his new wife, who was a long-time employee. You don't give away a million-dollar business without some records of that. You don't file joint tax returns without some records of what you're doing and who's getting the money and how you conveyed your interest away. Your accountants don't file those tax returns without you providing them because they make you sign an affidavit that says, I have given you the material that makes what I'm telling you is true. Every accountant makes you sign the same type of affidavit. Now, Mr. Kibler had lured me into a trap, which I referenced in court and was on the record. Your Honor, Justice Cates almost did the same thing, asking about what was produced and what wasn't produced. I realized for the first time in my career, I had made this mistake. When I send a request to produce an interrogatory and or a subpoena to somebody and they say, all right, here's some stuff, what else do you want? Well, I need the backup for the tax returns. I need the backup for the taxes. Well, I don't have that. I gave it to my accountant. My accountant won't give it to you. What else do you want? I kept trying and trying, sending all these letters, filing these motions. It finally dawned on me. It is not my burden to tell them what else I want. You send a request to produce and discovery all the financial records associated with these businesses, these transactions, this document, whatever the case may be. The burden is on the recipient to comply. It's not on me to tell them if they've complied yet or not. The problem that we have here is that Mr. Kibler undertook to represent this guy. Then when we started sending subpoenas to compel the tax returns and the backup for the taxes that they wouldn't give us and the movement was lost, he undertook to represent them as well and the corporation that would have this other material. He told me, and I assume it's true, although it's not a record because we still haven't the documents, that they made him the trustee of the trust that they transferred the stuff into. Here we have one lawyer who represents the party, the trust, and the business. I can't get that stuff myself absent going through discovery. One of his arguments is that the judge entered this sanctioned sua sponte and that you can't do that. Well, that's simply not the case. The briefs and the documents are replete. I filed a motion for sanctions under 219C and said, you're not going to answer this discovery. We still don't have it. Mr. Shaffer, that was filed on January 28th, correct? Yes, Your Honor. That's the only motion for sanctions that I see in the record. Only motion for sanctions, that's true. Then the next thing I did, and I'm loathe, I always hate to go in front of a judge and say, Your Honor, I need an order that says you really, really meant that last order. I know you entered an order compelling this discovery and they did give us part of it and there was partial compliance. We came back to court. They wanted a protective order. They wanted all this other stuff. I kept thinking, well, I'll get the rest of the compliance somehow. And then what else do you want? We would all keep coming back to that. I wanted compliance. We wanted the discovery. And when Mr. Kiddler said, you know, it's not my client's fault that I didn't do it. He gave it all to me. Well, we don't know if that's true or not because I never got it. I still don't have it. A lot of it we still don't have. And the reality is, even if they sent me a certificate, you have to take the defendant's word or the respondent's word that they have given you everything. But as long as they're still objecting or saying things, we're not even sure if that's going to be relevant. Well, that's not the standard in discovery. The standard in discovery is could lead to something relevant. And so you have to comply and you have to do a certificate and say, I've given you everything. And where the court got fed up, and I think the new Supreme Court guidelines for these cases are very telling. The judges are supposed to have these cases over in 18 months. Now, that's a complicated one with kids. Here we were at a second motion to compel in a sanction hearing that they had been put on notice of about five times because I filed the motion. The court made a docket entry saying I still haven't ruled all this stuff. It may take it up for consideration. We noticed it back up. The court made another docket entry saying discovery still not complete. So for them to say we came in and we didn't know what was going to be entered. The court made an express docket entry saying they had never completed ruling on all those motions. So we all knew exactly what was teed up, everything that was still pending. And so for them to come in and say, yes, we didn't do it. It's been two years. The discovery still isn't done. The courts are supposed to have these cases tried in 18 months nowadays, even if there's kids. So here's one with no kids. We're just arguing over money, but we're trying to play hide the evidence. And I don't blame the guy. If I could find a way to get out of paying maintenance that I was ordered to pay for a life, I'd try to. I understand the concept. The problem is you can't not produce the evidence to back up the allegations. He wants to say what did what did the court do short of dismissing the petition to an order in order to enforce compliance? I don't see where the court took any lesser measures. Well, the court entered an order to compel. We then came back in the court, noted it hadn't been done. The court entered a second order saying Attorney Kibler has not complied with the order to compel. We then filed a second motion to compel. I can't speak for Mr. Kibler, but if a judge entered an order saying that I had not complied with an order to compel, I would file something or I would be standing on the other side's doorstep when they open for business the next day with my box full of stuff saying here it is because I don't want to go to jail or I don't want to have a compel. We didn't even finish discovery in two years, despite two motions and a lot two or three docket entries by the court saying the next one on March 10th, some discovery has been provided court reserves ruling on motion for sanctions and for attorney's fees. She gave us guidance and summarized the problems over and over and over and wrote it right in her own docket. But from a due process point of view, the motion for sanctions related to discovery that had already been completed. Not true, Your Honor. Discovery was never completed. Well, the motion for sanctions dealt with a specific request for discovery that had been served back in 2019. We continue to fight over business records, tax returns, all that stuff. No, but out of that particular request back in 2019, what was still pending? Well, as I sit here, it seems like the biggest thing, and Mr. that irritated me the most was Mr. Kibler's client saying I can't produce my own financial information because I gave it all to the accountant and the accountant saying is privileged. We don't have to give it to you. Now, I don't think that on the first motion to compel, you're saying that he you asked for the wife's no, no, not the wife. I don't think I can get the wife's information. Well, the corporate information you wanted to get from the wife, I think if you file a joint tax return, your wife can't say you can't have this because it's my information. If I Mr. Kibler's client goes to an accountant and says, here is all my financial information, prepare my tax return. And here's all the backup for that tax return. They got to give that to. That's not my only question is how how are these? There were a lot of people, third parties, everybody's fighting over discovery. I think you were right when you said the judge got fed up. I really think that from the the report of proceedings, it seems that the judge was fed up with everybody. That was my fault because I was too. Well, but reading the report of proceedings, it seems that you've characterized it correctly. But just from a due process point of view, I'm trying to understand how in this motion for sanctions, they would anticipate that the pleadings would be stricken when the motion for sanctions you originally filed in January dealt with your first request for production. Yes, your honor. And so it seemed like that had been complied with by hand delivery. Yeah, of a little bit of the stuff. But there was never we never reached the point where it was. You've got it all. You've got everything we're going to give you true, but but you don't have it all. And so that's why my motion for sanctions had 18 bullet points and expressly quotes that from I put the case law in there that decided to page seven of my brief unreasonable noncompliance with the discovery rule has been defined by the courts. It's a deliberate and pronounced disregard for that discovery rule. And a party need not violate more than one court order before the court can rely on that to dismiss the action. That's right in my motion. I cite to the Supreme Court rule. I cite to the case law. The court then expressly says in open court, we have never ruled on a motion for sanctions. You guys keep saying what you don't want to give. You want protective orders. You want all this other stuff. But we're not getting any closer to trial. You can't get a trial date because discovery is not over. Discovery issues remain months later. Parties may are trying to reach a compromise. Of course, going to continue it. Justice requires resolution of discovery issues, either by hearing of the court or agreement, reset motion to compel and motion for sanctions. That's in September of 21. She gives express notice in the docket, not just in open court, but enters it upon the docket that they're resetting the motion for sanctions and the motion to compel. Because I'm curious, though, why she didn't ever rule on your requests. You know, she never seemed to actually rule on the motions to compel on the production of the documents. She granted it. The motion to compel was granted, expressly granted. Order was entered, and I forwarded that to Mr. Kibler early on. And so that's the problem. If an order to compel is entered and you still don't comply and we still have to fight about what we're going to get and what we're not going to get. And then the court reserves ruling on the motion for sanctions. I think that is the court's express way. A good judge, if you come in and you say, we have this order to compel. They still haven't complied. Is the judge allowed to immediately say, all right, case is dismissed? No. I think they have to do exactly what Mr. Kibler said. They have to give you a chance to cure. We come in. The court says, makes a docket entry. Attorney Kibler still hasn't complied. And months later, the court makes a docket entry. Interest of judgment. The court, we're going to have to rule on this. They're giving the parties a chance to work this out and have an opportunity to have their heard on the merits. Then a year later, the court says, OK, I'm going to hear this and we're going to hear all these things. And the motion for sanctions was reserved. And I'm going to hear that, too. You're on express notice. There's no way that you don't know that that's coming. And the two court cases that I think the three things that I think control this are the Supreme Court rules, LaVagia and Link, because LaVagia is this exact case. Only they it only took four months to reach this point. They're arguing about discovery. They're arguing about caution subpoenas. They're arguing about whether the court entered an order, whether it was dilatory. And here we have no argument. You know, Mr. Kibler says this is all my fault. I need and they're willing to fix it. But and I, you know, I didn't argue that. I didn't belabor that. And I didn't even argue that that at that stage, because normally the court does it in a two stage hearing. If I won that, keep in mind, we had been doing original discovery for two years. If they were going to sanction this guy and make him pay that, it would be thousands, if not tens of thousands of dollars worth of fees that my client has paid me to chase the same discovery. Now, is it not some, you know, the court is going to have a hearing and say, all right, submit an affidavit on fees. You win. And I'm going to say, all right, here's all here's how many times with five letters, two motions, a motion for sanctions, five court appearances, all to get the same stuff that we still, as I sit here, don't have all of it. Or do I know, you know, that is he still taking the position? I don't have it. I gave it to my accountant. Is Mr. Kibler still representing all these people? The business is saying we're not going to give it to you either. I don't I just don't think that's the way that's the intent of the court. That's not that's not allowing a hearing on the merits. Uh, and. The I think the judge hit this square on the head, because if you look at the record on page 78, she said the representation of one party to the detriment of the party sitting beside you cannot be determined a the determination of my ruling. The judge saw this same problem. Mr. Kildare wanted to argue. We don't have to give it to you. And and that it was his fault and that he was too busy. And that may be true. But I can say this. I have never seen a motion to continue or extend time in any of the circuit courts in some Illinois relating to COVID that was denied. Not one time have I ever seen that. If somebody's sick, if somebody's staff is sick, if somebody's office is closed, if the courts are closed, if the clients are sick, that is universally granted. And so in this case, the judge said, you know, you've chosen to represent one party to the detriment of the party sitting beside you. And I and that just can't determine what's going on here. That doesn't work. And I did argue that that and that doesn't work. And it's not fair. And you certainly can't get justice. If you're playing hide the evidence, and I don't know what the evidence is, because we still haven't seen it all. The you know, the Supreme Court gave us these rules and called them rules, and we try to follow them and the courts try to follow and they enter orders. But Judge Gill squared this up on three or four different issues gave a warning five or six different times. And I just don't see that you could do any better job. Okay. Do you have a conclusion, Mr. Shaffer? Well, I think that the one thing that never got touched on here very briefly in conclusion is the standards and the standards are very clear. And it requires a clear abuse of discretion by the court considerable deference page 18 and 19 of my brief. The abuse of use of discretion will only be filed found where no such reasonable person could adopt a view of the trial court. That's Jackson and technology innovation pages 18 and 19 of my brief. Abuse of discretion standard in this circumstance is very high. Thank you. Okay, thank you, Mr. Shaffer. Justice Welch, any questions? No questions. Justice Moore. Okay, Mr. Kibler rebuttal. Yes, I'd like to start by noting an objection to several items that were referenced there do not appear on the record. First, Attorney Shaffer referenced something about me being a trustee. But he, as I heard him say it was not in the record. So I would, I would move to strike that statement. Actually, I think there is some reference somewhere I did read that where you you were a trustee, I did read that in the record. So it is at least it rang a bell when he mentioned it. So that's one of the reasons I asked you about the conflict to be understood. And then as to the Supreme Court guidelines that were referenced on timeliness, those were not put into effect until May of this year, I believe. And so they were not relevant at the time of the hearing. So I would ask the court not to consider that in relation to this argument. He also talked about the amount of his fees and affidavit or 10s of 1000s of dollars. None of that was in evidence at any point in time. And so I'd ask the court not to consider those statements. Okay, your comment, your objections will be noted. Thank you. Now, essentially, what's happening is I did take responsibility for delay that would have been attributable to respondent. But not all the delay was attributable to respondent. There was substantial delay that was that was attributable to the petitioner. You know, initially, respondent complied with discovery requests, February 4th, 2020. And then there was, I believe, approximately 10 month period before petitioner's counsel sent an informal follow up request requesting additional or other items in addition to those that were requested in the first request. And then court has those documents in the record. It's clear, I believe that there are different documents that are being requested or new documents. So there's never been a factual finding in this case that there was a failure to provide documents which respondent had and were in his possession. There was no factual finding that the current discovery dispute that was brought before the court and was primarily focused on by all the parties was related to the initial request. No factual findings related to that. Again, that goes to the basis and reasons for the the sanction order. Additionally, petitioner did make a choice. After the informal discovery request, you know, there was a long period of time before petitioner brought this before the court. And, you know, I think some of this is in the record in terms of our arguments about conversations that we had, argument relating to the third party, and the fact that there was a dispute in discussion that was going on between counsel about where these records were going to come from. And the reality was that petitioner chose not to queue this up and bring it to the court again until August of 2021. But yet, all of that is cast into being the sole responsibility of the respondent. And that's just not equitable. It's not just, it's not rational, and it's not reasonable. And unfortunately, the reflex here by the court was apparently to fault respondent generally and broadly for the fact that discovery had been completed with no specific factual findings of what discovery was incomplete and what delay was attributable to the respondent between what dates. Just the whole thing. It's respondent. There's no factual basis for that inference in this case. The record doesn't support it. So there is a clear abuse of discretion on that basis and others. The sanction was surprising. No party, the petitioner didn't advocate during the hearing for a dismissal. The petitioner referenced some cost attributed to his client in addressing discovery matters. So in reality, in the circumstances of this case, at worst, the most appropriate sanction would have been for the court to address the concerns of the costs that were raised by petitioner. But the court didn't do that. The court didn't order specific discovery to be provided. The court didn't say, you have to provide this and you haven't complied. And as in many of these cases, counsel referenced Lovagen. That's a case where I believe the court said, you got to do this by this date. And they didn't. And the court had warned them, if you don't, you're risking dismissal. Counsel cites link. That's a federal case. It doesn't relate to our rules. The clear conclusion here, and the appellate court is to look at, quote, the particular behavior of the offending party that gave rise to the sanction and the effects that the behavior had upon the adverse party. That's Smith. The clear total picture here is this order was not reasonable and it did not comply with our rules and precedents. Thank you. Okay. Thank you both for your arguments today. This matter will be taken under advisement and we will issue an order in due course. Thank you. Have a great day.